UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| **AUTOMATED VENDING, LLC**<br>　　　　Plaintiff,<br><br>　　v.<br><br>**LEGO GROUP,**<br>　　　　Defendant. | **Case No. 2:24-cv-137**<br><br>**Jury Trial Demanded** |

## ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff AUTOMATED VENDING, LLC ("Plaintiff") files this complaint against the Lego Group ("Defendant"), maker, seller and user of infringing products that infringe at least patent claim 15 of U.S. Patent No. 9,245,403 (hereinafter "the '403 Patent")[1] (**Exhibit 1**) and patent claims 1, 9, 14 of U.S. Patent No. 9,959,530 ("the '530 Patent") (**Exhibit 3**) alleges as follows:

## PARTIES

1. Plaintiff is a Wyoming limited liability company with an address of 1712 Pioneer Ave., Suite 500, Cheyenne, WY 82001.

2. The Lego Group is a privately held company based in Billund, Denmark. The company is still owned by the Kirk Kristiansen family, who founded it in 1932. Defendant has a place of business located at 2601 Preston Rd #1222, Frisco, TX 75034 and another location just outside this district located at 3000 Grapevine Mills Pkwy, Grapevine, TX 76051.

---

[1] The '403 Patent expires no earlier than January 17, 2034, according to Google Patents. (https://patents.google.com/patent/US9245403B2/en?oq=9%2c245%2c403+, last visited on December 22, 2023).

## JURISDICTION AND VENUE

3. This action arises under the patent laws of the United States, 35 U.S.C. § 271 *et seq*. Plaintiff is seeking damages, as well as attorney fees and costs.

4. Jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1331 (Federal Question) and 1338(a) (Patents).

5. On information and belief, this Court has personal jurisdiction over Defendant because Defendant has committed, and continues to commit, acts of infringement in this District, has conducted business in this District, and/or has engaged in continuous and systematic activities in this District.

6. Upon information and belief, Defendant's instrumentalities that are alleged herein to infringe were and continue to be used, imported, offered for sale, and/or sold in this District.



*Figure 1* – Excerpt of website visited on February 19, 2024, at https://www.lego.com/en-us/stores/store/stonebriar-centre.

7. Venue is proper in this District under 28 U.S.C. §1400(b) because Defendant is deemed to be a resident in this District as it sells products in this District through its store. Alternatively, acts of infringement are occurring in this District and Defendant has a regular and established place of business in this District.

**PATENT-IN-SUIT**

8. On January 26, 2016, the United States Patent and Trademark Office ("USPTO") duly and legally issued the '403 Patent, entitled "Method and device for accessing, controlling and purchasing a product through a dispenser." The '403 Patent is attached as **Exhibit 1.**

9. Plaintiff is the sole and exclusive owner, by assignment, of the '403 Patent.

10. The '403 Patent describes one preferred embodiment as an "automated dispenser that is configured to dispense a product in response to a signal from a motion sensor, where the motion sensor can detect the absence, presence, or motion of an object, is set forth herein. The motion sensor may be activated by an activation signal received from a network server, wherein the signal indicates that the automated dispenser is authorized to dispense." (**Exhibit 1**, '403 Patent, Col. 3, lines 6-21).



***Figure 2*** - *Figure 1 of the '403 Patent. (Exhibit 1).*

11.     Additionally, the motion sensor may be configured to detect objects or hand gestures as a dispensing motion. Referring now to the drawings, FIG. 1 illustrates a block diagram of an exemplary automated dispenser 102. The automated dispenser 102 can receive an activation signal. Upon receipt of the activation signal, the automated dispenser 102 can dispense a product 114 in response to an object 116 detected by the automated dispenser 102."



**Figure 3**- *Figure 2 of the '403 Patent. (Exhibit 1).*

12.     "FIG. 2 illustrates a schematic diagram of an exemplary automated dispenser system. A network server 202 is in communication with an automated dispenser 102 and a mobile device 206. The communication may be through the internet, a wireless communication pathway, a wired communication pathway, near-field communication, or any other method of communication. The mobile device 206

may be a smart phone, tablet computer, portable gaming device, handheld computing device, or any other portable electronic device.

13. The network server 202 includes an authentication module 210 that can approve requests from the mobile device 206 to activate the automated dispenser 102 (automated dispenser 204). The automated dispenser 102 includes an identifier 220 that is detectable by the mobile device 206. The automated dispenser 102 is associated with the identifier 220, wherein the identifier 220 is configured to be scanned by a mobile device 206 for purchase of the product. For example, the identifier 220 may be visually displayed on or near the automated dispenser 102.

14. Alternatively, the identifier 220 may be communicated through near-field-communication ("NFC"). In another example, the identifier 220 may be communicated using auditory sounds or other signals that may be understood by a human or the mobile device 206. The mobile device 206 may include a scanner, such as optical, NFC, or other device that is able to detect the identifier 220 of the automated dispenser 102. The mobile device 206 can scan the identifier 220 to communicate the identification information generated by the identifier 220 in a request to the network server 202 to purchase a product.

15. The request can be a dispensing request, a purchasing request, or a combination thereof. For example, the request may be for dispensing of a free sample. In another example, the request may be for a purchase of 8 ounces of beer. In turn, the authentication module of the network server 202 either approves or rejects the request. Upon approval, the network server 202 communicates an activation signal to the automated dispenser 102, which then activates a motion sensor included with the automated dispenser 102 as described herein. Upon activation of the motion sensor, the motion sensor may detect the object 116 (FIG. 1) to initiate dispensing of the product 114 (FIG. 1).

16. Plaintiff possesses all rights of recovery under the '403 Patent, including the exclusive right to recover for past, present and future infringement.

17. After giving full proper credit to the prior art and having conducted a thorough search for all relevant art and having fully considered the most relevant art known at the time, the United States Patent Examiner allowed all of the claims of the '403 Patent to issue. In so doing, it is presumed that Examiner used his knowledge of the art when examining the claims. *K/S Himpp v. Hear-Wear Techs., LLC,* 751 F.3d 1362, 1369 (Fed. Cir. 2014).

18. The Examiner had experience in the field of the invention, and the Examiner properly acted in accordance with a person of ordinary skill. *In re Sang Su Lee,* 277 F.3d 1338, 1345 (Fed. Cir. 2002).

19. During the prosecution of the patent application, United States Patent and Trademark Office examiner examined prior art in thirteen different classifications.

20. The examiner made a point to thoroughly document the classifications reviewed as part of the patent application vetting process, including **G06Q20/401** titled "Transaction verification," that involves subject matter wherein the details of a transaction are cryptographically processed to allow subsequent confirmation thereof.

21. The examiner also searched the classification category **G06Q20/102** titled <u>Bill distribution or payments</u> that involved generating notices of payment due, or transferring funds in response thereto.

22. Another classification searched by the examiner was **G05B15/02**, titled "Systems controlled by a computer electric."

23. A fourth classification category of prior art searched by the examiner is documented as **G06Q20/18** that involves payment architectures involving self-service terminals [SST], vending machines, kiosks or multimedia terminals.

24. A fifth classification category searched by the examiner was **G06Q20/3224** - Transactions dependent on location of M-devices Location of the mobile device used plays an essential role in executing or authorizing a payment transaction.

25. A sixth classification category searched by the examiner was

**G06Q20/3278** - RFID or NFC payments by means of M-devices, which involves payments using RFID or NFC-technology to communicate between the transaction entities.

26. A seventh classification category searched by the examiner was **G06Q20/401**4, that involves conducting an identity check for a transaction.

27. An eighth classification category searched by the examiner was **G07F11/002**.

28. A ninth classification category searched by the examiner was **G07F13/02** that is a coin-freed apparatus for controlling dispensing or fluids, semi-liquids or granular material from reservoirs by volume.

29. A tenth classification category searched by the examiner was **G07F13/025** that involves a coin-free apparatus for controlling dispensing or fluids, semi-liquids or granular material from reservoirs by volume wherein the volume is determined during delivery.

30. An eleventh classification category searched by the examiner was **G07F9/001** that involves prior art involving interfacing with vending machines using mobile or wearable devices.

31. A twelfth classification category searched by the examiner was **G07F9/026** that involves devices for alarm or indication, *e.g.* when empty; advertising arrangements in coin-freed apparatus for alarm, monitoring and auditing in vending machines or means for indication, *e.g.* when empty. This classification involves "indicating operational conditions of the vending machine, *e.g.* alarms, information about the actual inventory of the vending machine, stock depletion of (a part of) the articles in the vending machine.

32. A thirteenth classification category searched by the examiner was **H04W4/80** services using short range communication, *e.g.* near-field communication [NFC], radio-frequency identification [RFID] or low energy communication.

33. The '403 Patent contains thirteen claims including three independent

claims (claims 1, 11, and 15).

34. In view of the foregoing, the claims of the '403 Patent are novel and non-obvious, including over all non-cited art which is merely cumulative with the referenced and cited prior art. Likewise, the claims of the '403 Patent are novel and non-obvious, including over all non-cited contemporaneous state of the art systems and methods, all of which would have been known to a person of ordinary skill in the art, and which were therefore presumptively also known and considered by the Examiner.

35. The claims of the '403 Patent were all properly issued, and are valid and enforceable for the respective terms of their statutory life through expiration, and are enforceable for purposes of seeking damages for past infringement even post-expiration. *See, e.g., Genetics Institute, LLC v. Novartis Vaccines and Diagnostics, Inc.,* 655 F.3d 1291, 1299 (Fed. Cir. 2011) ("[A]n expired patent is not viewed as having 'never existed.' Much to the contrary, a patent does have value beyond its expiration date. For example, an expired patent may form the basis of an action for past damages subject to the six-year limitation under 35 U.S.C. § 286") (internal citations omitted).

## Accused Instrumentality

36. Defendant makes, uses, offers for sell, and sells within the United States and/or imports into the United States its Lego distribution vending machines, and related versions that contain the same Accused Functionality (collectively, herein after the "Accused Instrumentalities") as outlined in Exhibits 2 and 4.

## COUNT ONE
### (Infringement of United States Patent No. 9,245,403)

37. Plaintiff refers to and incorporates the allegations in Paragraphs above, the same as if set forth herein.

38. This cause of action arises under the patent laws of the United States and, in particular under 35 U.S.C. §§ 271, *et seq*.

39. Defendant has knowledge of its infringement of the '403 Patent, at least as

of the service of the present complaint.

40. The '403 Patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.

41. Upon information and belief, Defendant has infringed and continues to infringe one or more claims, including at least Claim 15, of the '403 Patent by manufacturing, using, importing, selling, offering for sale, and/or providing (as identified in the Claim Chart attached hereto as **Exhibit 2**) its Accused Instrumentalities, which infringe at least Claim 15 of the '403 Patent. Defendant has infringed and continues to infringe the '403 patent either directly or through acts of contributory infringement or inducement in violation of 35 U.S.C. § 271.

42. Defendant also has and continues to directly infringe, literally or under the doctrine of equivalents, one or more claims, including at least Claim 15, of the '403 Patent, by having its employees internally test and use these Accused Instrumentalities.

43. The service of this Complaint, in conjunction with the attached claim chart and references cited, constitutes actual knowledge of infringement as alleged here.

44. Despite such actual knowledge, Defendant continues to make, use, test, sell, offer for sale, market, and/or import into the United States, products that infringe one or more claims, including at least Claim 15, of the '403 Patent.

45. On information and belief, Defendant has also continued to sell the Accused Instrumentalities and distribute product literature and website materials inducing end users and others to use its products in the customary and intended manner that infringes one or more claims, including at least Claim 15, of the '403 Patent. *See* **Exhibit 2.**

46. At least since being served by this Complaint and corresponding claim chart, Defendant has actively, knowingly, and intentionally continued to induce infringement of the '403 Patent, literally or by the doctrine of equivalents, by selling Accused Instrumentalities to their customers for use in end-user products in a manner that infringes one or more claims, including at least Claim 15, of the '403 Patent.

47.     **Exhibit 2** includes at least one chart comparing the exemplary Claim 15 of the '403 Patent to Defendant's Accused Instrumentalities. As set forth in this chart, the Defendant's Accused Instrumentalities practice the technology claimed by the '403 Patent. Accordingly, the Defendant's Accused Instrumentalities incorporated in this chart satisfy all elements of the exemplary Claim 15 of the '403 Patent.

48.     Plaintiff therefore incorporates by reference in its allegations herein the claim chart of **Exhibit 2**.

49.     Plaintiff is entitled to recover damages adequate to compensate for Defendant's infringement.

50.     Defendant's actions complained of herein will continue unless Defendant is enjoined by this court.

51.     Defendant's actions complained of herein are causing irreparable harm and monetary damage to Plaintiff and will continue to do so unless and until Defendant is enjoined and restrained by this Court.

52.     Plaintiff is in compliance with 35 U.S.C. § 287.

## COUNT TWO

### (Infringement of United States Patent No. 9,959,530)

53.     Plaintiff refers to and incorporates the allegations in Paragraphs above, the same as if set forth herein.

54.     This cause of action arises under the patent laws of the United States and, in particular under 35 U.S.C. §§ 271, *et seq*.

55.     Defendant has knowledge of its infringement of the '530 Patent, at least as of the service of the present complaint.

56.     The '530 Patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.

57.     Upon information and belief, Defendant has infringed and continues to infringe one or more claims, including at least Claims 1, 9, 14 of the '530 Patent by

manufacturing, using, importing, selling, offering for sale, and/or providing (as identified in the Claim Chart attached hereto as **Exhibit 4**) its Accused Instrumentality, which infringes Claims 1, 9, 14 of the '530 Patent. Defendant has infringed and continues to infringe the '530 patent either directly or through acts of contributory infringement or inducement in violation of 35 U.S.C. § 271.

58. Defendant also has and continues to directly infringe, literally or under the doctrine of equivalents, Claims 1, 9, 14 of the '530 Patent, by having its employees internally test and use these Accused Instrumentalities.

59. The service of this Complaint, in conjunction with the attached claim chart and references cited, constitutes actual knowledge of infringement as alleged here.

60. Despite such actual knowledge, Defendant continues to make, use, test, sell, offer for sale, market, and/or import into the United States, products that infringe Claims 1, 9, 14 of the '530 Patent.

61. On information and belief, Defendant has also continued to sell the exemplary Products and distribute product literature and website materials inducing end users and others to use its products in the customary and intended manner that infringes Claims 1, 9, 14 of the '530 Patent. *See* **Exhibit 4.**

62. At least since being served by this Complaint and corresponding claim chart, Defendant has actively, knowingly, and intentionally continued to induce infringement of the '530 Patent, literally or by the doctrine of equivalents, by selling Accused Instrumentalities to their customers for use in end-user products in a manner that infringes Claims 1, 9, 14 of the '530 Patent.

63. **Exhibit 4** includes at least one chart comparing the exemplary claim 1 of the '530 Patent to Defendant's exemplary Products. As set forth in this chart, the Defendant's exemplary Products practice the technology claimed by the '530 Patent. Accordingly, the Defendant's exemplary Products incorporated in this chart satisfy all elements of Claims 1, 9, 14 of the '530 Patent.

64. Plaintiff therefore incorporates by reference in its allegations herein the

claim chart of **Exhibit 4**.

65. Plaintiff is entitled to recover damages adequate to compensate for Defendant's infringement.

66. Defendant's actions complained of herein will continue unless Defendant is enjoined by this court.

67. Defendant's actions complained of herein are causing irreparable harm and monetary damage to Plaintiff and will continue to do so unless and until Defendant is enjoined and restrained by this Court.

68. Plaintiff is in compliance with 35 U.S.C. § 287.

## DEMAND FOR JURY TRIAL

69. Plaintiff, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff asks the Court to:

(a) Enter judgment for Plaintiff on this Complaint on all cases of action asserted herein;

(b) Enter an Order enjoining Defendant, its agents, officers, servants, employees, attorneys, and all persons in active concert or participation with Defendant who receives notice of the order from further infringement of the patents-in-suit (or, in the alternative, awarding Plaintiff running royalty from the time judgment going forward);

(c) Award Plaintiff damages resulting from Defendant's infringement in accordance with 35 U.S.C. § 284;

(d) Award Plaintiff such further relief to which the Court finds Plaintiff entitled under law or equity.

Dated: February 26, 2024

Respectfully submitted,
GARTEISER HONEA, PLLC

*/s/ Randall Garteiser*
Randall Garteiser
   Texas Bar No. 24038912
   rgarteiser@ghiplaw.com
M. Scott Fuller
   Texas Bar No. 24036607
   sfuller@ghiplaw.com
Christopher A. Honea
   Texas Bar No. 24059967
   chonea@ghiplaw.com
**GARTEISER HONEA, PLLC**
119 W. Ferguson Street
Tyler, Texas 75702
Telephone: (903) 705-7420

**Attorneys for Plaintiff**